# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RALPH NEUMANN, *et al.*,      )
                                     )

                Plaintiffs,     )

    v.                          )     Case No. 03 C 8769

                                     )

CARLSON ENVIRONMENTAL, INC.,  )     Judge Joan B. Gottschall

*et al.*,                            )

                                   )

             Defendants.    )

## MEMORANDUM OPINION AND ORDER

Ralph Neumann and William Neumann (collectively "Neumanns"), NIM Plastics Corporation ("NIMM"), and Chicago Title and Trust Co. as Trustee for Trust No. 1108324 ("Land Trust")[1] sued Carlson Environmental, Inc. ("Carlson") for consumer fraud (Count V), breach of contract (Count VI), negligence (Count VII), and negligent misrepresentation (Count VIII). Plaintiffs[2] sued Gary and Marlene Hopmayer (collectively "Hopmayers")[3] for violation of Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") (Count I), violation of the Illinois Joint Tortfeasors Contribution Act (Count II), violation of the Illinois Environmental Protection Act (Count III), fraud (Count IV), and violation of Section 113(f) of CERCLA (Count IX).

---

[1]The Land Trust closed in June 2003 and thus is only a nominal plaintiff. Amend. Compl. ¶ 2.

[2]Where it makes sense to do so, the court refers to the Neumanns, NIMM, and the Land Trust collectively as "plaintiffs."

[3]Plaintiffs also originally sued Clear Lam Packaging, Inc. ("Clear Lam") and Web Tool and Manufacturing Inc. ("Web Tool"). Web Tool was dismissed as a party by this court's order on July 20, 2004, and Clear Lam was dismissed as a party by this court's order on August 3, 2004. Therefore, the Hopmayers are the only remaining defendants as to Counts I, II, III, and IX, which originally named Clear Lam and Web Tool as defendants.

Carlson has moved to dismiss all counts against it,[4] and the Hopmayers have moved to dismiss all counts against them. The Hopmayers have also moved to strike plaintiffs' jury demand and request for attorneys' fees in Counts I and IX, and plaintiffs' request for compensatory damages in Count IX. Additionally, plaintiffs have moved to strike three of the exhibits attached to the Hopmayers' motion to dismiss. As discussed more fully below, Carlson's motion to dismiss is denied; the Hopmayers' motion to dismiss is granted in part and denied in part; the Hopmayers' motion to strike is granted in part and denied in part; and plaintiffs' motion to strike is denied as moot.

## I.    Background[5]

The Neumanns are the principals of NIMM and the beneficiaries of the Land Trust. In March 2000, plaintiffs made an offer on real property located in Elk Grove Village, Illinois ("the Property"). Plaintiffs allege that the Hopmayers did not disclose the presence of underground storage tanks ("USTs"), environmental contaminants, or hazardous substances despite the fact that the Hopmayers covenanted that four USTs existed on the property when they purchased it in 1984. The USTs were abandoned on the Property, plaintiffs allege, after the Hopmayers had purchased it.

The 2000 purchase contract allowed plaintiffs 30 days to conduct a due diligence examination of the property, including a physical examination and a Phase I Environmental Site

---

[4]On May 9, 2005, the court granted Carlson's motion to dismiss based solely on Carlson's argument that plaintiffs' complaint was untimely. On November 30, 2005, however, the court granted plaintiffs' motion to reconsider and reinstated Carlson as a defendant in this case. At a status hearing, Carlson correctly noted that the court had never considered its arguments (other than timeliness) that Counts V and VII should be dismissed. Thus, the court considers now those remaining arguments.

[5]The facts contained in this section are derived from plaintiffs' amended complaint.

Assessment. To that end, plaintiffs contracted with Carlson to conduct the Phase I assessment. On April 4, 2000, Carlson completed this assessment and issued a written report ("Phase I Report"). As part of this assessment, Carlson was to review available land use records. The Phase I Report stated that no USTs were located on the Property, even though records of the Fire Department of the Village indicated that four USTs existed on the Property. The Phase I Report also concluded that no recognized environmental conditions ("RECs")[6] existed on the Property and that no additional subsurface investigations were warranted or recommended. Plaintiffs allege they relied on this assessment and the Hopmayers' failure to disclose any environmental issues when plaintiffs purchased the property from the Hopmayers.

Approximately two years later, plaintiffs attempted to sell the Property, and the prospective buyer contracted with Carlson to perform another environmental assessment of the Property – a Phase I Update ("Update"). The Update, based on a review of relevant Fire Department Records, uncovered that four USTs were present on the Property, and the sale consequently failed. In the Update, Carlson stated that because there was no information available "regarding the abandonment of the USTs, and whether any leaks or breaches had occurred," the USTs' presence constituted a historical recognized environmental condition.

At plaintiffs' request, Carlson conducted a subsurface soil investigation of the Property to determine the impact of the USTs in addition to what, if any, further investigation should be conducted. In that investigation, Carlson determined that the Property's soil did not contain any volatile organic compounds ("VOCs") in excess of the limits provided by Illinois law.

In June 2003, plaintiffs entered into negotiations with another buyer. When this buyer

---

[6]A determination of the presence of RECs means that the subject property contains, or likely contains, hazardous substances under conditions that indicate a past release of such hazardous substances.

had the Property assessed, it was determined that five compounds contained in the soil exceeded limits permitted by Illinois law, namely, Benzene, Cis-1, 2-Dichloroethene, Tetrachloroethene, Toluene, and Trichloroethene. It was also determined that the Property contained eight VOCs at concentrations higher than allowable under Illinois law. Consequently, plaintiffs were able to sell the Property only on the condition that they remove the USTs, remediate the soil to the extent necessary to obtain a comprehensive No Further Remediation ("NFR") letter from the Illinois EPA, and deposit $300,000 in an escrow account to cover any further remediation costs.

Plaintiffs allege that the Hopmayers, as owners of the Property prior to plaintiffs, knew of the USTs and failed to disclose their presence to plaintiffs prior to the sale of the Property. Additionally, plaintiffs allege that the Hopmayers directed the abandonment and closure of the USTs in a manner that led to their improper disposal, as well as to the Property's contamination.

## II. Discussion

In reviewing a motion to dismiss for failure to state a claim, the court reviews all facts alleged in the complaint and any reasonable inferences drawn from those facts in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The court will grant the motion only if it appears that the plaintiff cannot prove any set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### A. Carlson's Motion to Dismiss

#### 1. Consumer Fraud (Count V)

Carlson argues that plaintiffs' claim for consumer fraud should be dismissed because plaintiffs fail to allege certain elements of the cause of action with specificity, and Carlson argues that such specificity is required by Fed. R. Civ. P. 9(b). In particular, Carlson argues that "plaintiffs do not allege that CEI *knowingly* made false statements, nor do they allege that CEI

intended that plaintiffs rely on the false statements CEI made." Memo. in Support of Carlson's Mot. to Dismiss, at 7 (emphasis in original). In response, plaintiffs argue that Count V is a claim under the Consumer Fraud Act, 805 ILCS 505/1, *et seq*., which does not require that a plaintiff prove that the defendant knowingly made a false statement. Pl.'s Response, at 10. Plaintiffs argue that their complaint is sufficiently pled as to the remaining elements. In reply, Carlson contends that plaintiffs have failed to plead the elements of a claim under the Consumer Fraud Act with specificity.[7]

For a private cause of action under the Illinois Consumer Fraud Act, the plaintiff must prove: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149 (2002).

Carlson argues that "[p]laintiffs have alleged no reason why Carlson, either knowingly or unknowingly, wanted to induce the Plaintiffs to purchase the Property in 2000." Reply, at 10. The court notes that, to state a cause of action, plaintiffs need not plead Carlson's motivation behind the deceptive act, but only that defendant intended plaintiff to rely on the deception.

Additionally, Carlson argues that plaintiffs have not alleged with specificity how they were deceived by the alleged misrepresentations or how they were damaged as a proximate

---

[7]Since Carlson initially assumed that Count V was a claim for common law fraud and learned through the response to the motion to dismiss that it was in fact a statutory claim under the Illinois Consumer Fraud Act, Carlson complains that it "needs to know exactly what cause of action is being alleged in order to respond to Count V of the Complaint." Reply, at 9. Because a plaintiff is not required to plead the statute or legal theories upon which a claim may be based, however, Carlson's mistaken interpretation of plaintiffs' complaint does not affect the analysis, and plaintiffs may proceed under the Illinois Consumer Fraud Act. *See Shah v. Intercontinental Hotel Chicago Operating Corp*., 314 F.3d 278, 282 (7th Cir. 2002).

cause of the misrepresentations. The elements, however, are self-evident from the allegations in the complaint. Plaintiffs allege that they were deceived because they thought the property was free of environmental hazards when it was not. Amend. Compl. ¶¶ 19, 21, 22, 23, 24, 25, 79. Plaintiffs have also pled how they were damaged as a proximate result of the alleged fraud. Amend. Compl. ¶¶ 25, 33, 43, 79.[8] The motion to dismiss Count V is denied.

## 2. *Negligence (Count VII)*

Carlson argues that plaintiffs' claim for negligence in Count VII is barred under the economic loss doctrine, commonly known as the *Moorman* Doctrine. Carlson reasons that because its duty to plaintiffs was purely contractual (*i.e.* its duty properly to inspect, research, and conduct a final technical report concerning the environmental status of the Property), the *Moorman* doctrine bars plaintiffs' recovery in tort for the purely economic damages requested.

In *Moorman Manufacturing Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 91 (1982), the Illinois Supreme Court held that a plaintiff "cannot recover for solely economic loss under the tort theories of strict liability, negligence, and innocent misrepresentation." The Illinois Supreme Court has recognized three exceptions to the general rule: (1) where the plaintiff sustained damage, such as personal injury or property damage, resulting from a sudden or dangerous occurrence, *id.* at 86; (2) where the plaintiff's damages were proximately caused by defendant's intentional, false representation, *id.* at 88-89; and (3) where the plaintiffs' damages were

---

[8]The court notes that, although plaintiffs have pled the elements with specificity, Rule 9(b) does not apply to pleading the elements. Federal Rule of Civil Procedure 9(b) states that "In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). Under the Rule, the plaintiff is required to plead only "the who, what, when, where, and how: the first paragraph of any news story." *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998). Carlson has not argued that the complaint fails to plead the "who, what, when, where, and how" of the alleged fraud, as required by Rule 9(b).

proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions, *id.* at 89.[9]

In *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 161-62 (1994), the Illinois Supreme Court discussed the *Moorman* doctrine in the context of claims for professional malpractice.  The Court stated: "The evolution of the economic loss doctrine shows that the doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Id.* at 162.  By this, the Court meant that where something other than contract gives rise to a duty (such as an attorney's professional duty to provide competent representation) the *Moorman* doctrine does not preclude recovery for breach of that duty in tort.

In making this distinction, Illinois courts have held that the *Moorman* doctrine barred malpractice actions for negligence against engineers, *Fireman's Fund Insurance Co. v. SEC Donahue, Inc.*, 281 Ill. App. 3d 789 (1st Dist. 1996); and architects, *2314 Lincoln Park West Condominium Assoc. v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302 (1990).  These courts have held that the *Moorman* doctrine applies to bar such claims against engineers and architects because they produce tangible products (and the terms of producing a tangible product are more susceptible to reduction in a contract).  *Fireman's Fund*, 281 Ill. App. 3d at 796; *2314 Lincoln Park West*, 136 Ill.2d at 313-14.

In contrast, Illinois and federal courts have held that the *Moorman* doctrine does not bar

---

[9]Carlson has not moved to dismiss Count VIII for negligent misrepresentation, which alleges that Carlson was in the business of supplying information to others.

malpractice actions for negligence against attorneys, *Collins v. Reynard*, 154 Ill.2d 48 (1993); accountants, *Congregation of the Passion*, 159 Ill.2d 137; insurance brokers, *Kanter v. Deitelbaum*, 271 Ill. App. 3d 750 (1st Dist. 1995); investment consultants, *Chicago Housing Authority v. J.A. Hannah Investment Advisory Service, Inc.*, Civ. No. 95 C 5251, 1996 WL 328033 (N.D. Ill. May 9, 1996) (denying motion to dismiss); and, most relevant to the present matter, environmental consultants, *Tribune Co. v. Geraghty & Miller, Inc.*, No. 97 C 1889, 1997 WL 438836 (N.D. Ill. July 25, 1997).

In this case, plaintiffs' negligence claim is based on Carlson's alleged professional malpractice in preparing the incorrect environmental review and report. In *Tribune Co.*, 1997 WL 438836, at *3, on facts very similar to the instant case, another court in this district denied an environmental consultant's motion to dismiss a professional negligence claim. Plaintiff in that case hired the environmental consultant to conduct a Phase I environmental site assessment in connection with a real estate transaction, and the consultant concluded incorrectly in an assessment and written report that that the property at issue was asbestos-free. *Id*. at *1. Holding that the *Moorman* Doctrine did not preclude plaintiff's negligence claim, the court reasoned that although defendant's services culminated in a written report, the value of the defendant's services was in the "analytical work summarized in the report." *Id*. at *3. The court reasoned that an environmental consultant provides services more akin to an attorney or accountant, than an architect or engineer, and held that the defendant had not established as a matter of law that the *Moorman* Doctrine barred plaintiff's claim. *Id*. ("In contrast to the relationship between an attorney or an accountant and [his] client, the relationship between an

architect and his client produces something tangible, such as a plan that results in a structure.").[10]

Because Carlson's particularized knowledge and expertise gave rise to a duty independent of its contract with plaintiffs (its professional duty to provide an accurate environmental assessment) and because the primary service provided to plaintiffs was intangible, this court agrees with the court in *Tribune Co.* that the *Moorman* doctrine does not bar a claim for negligence based on professional malpractice by an environmental consultant. The motion to dismiss Count VII is denied.

B.      Hopmayers' Motion to Dismiss

1.      *Section 107 of CERCLA (Count I)*

Count I alleges a cause of action against the Hopmayers under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for response costs plaintiffs have incurred in addressing contaminants on their property, which was sold to them in 2000 by the Hopmayers. Plaintiffs maintain that the Hopmayers are "responsible parties" under CERCLA because they were owners or operators of the property at the time hazardous substances were disposed of on the property.

The Hopmayers argue that the court should abstain from consideration of Count I, citing *Burford v. Sun Oil Company,* 319 U.S. 315 (1943).[11]  *Burford* abstention is appropriate when a

_____

[10]Carlson's reliance on *NBD Bank v. Krueger Ringier, Inc.*, 292 Ill. App. 3d 691 (1st Dist. 1997), and *Singer v. Bulk Petroleum Co.*, 9 F. Supp. 2d 916 (N.D. Ill. 1998), does not change the analysis. In those cases, plaintiffs brought negligence claims against a seller and lessee, respectively, whose duties were purely contractual. The subject of the Carlson's motion involves the performance of a professional service giving rise to duties outside of any contract, and thus potential tort liability.

[11]Because the court grants the motion to dismiss Count IX below, the court need not address the Hopmayers' argument that *Burford* abstention applies to Count IX as well.

claim raises difficult questions of state law bearing on policy problems of substantial public importance, the importance of which transcends the result of the individual case at bar or when the exercise of federal review would be disruptive of state efforts to establish a coherent policy with respect to matters of substantial public concern.  Here, the Hopmayers argue, Illinois has a program called the LUST ("leaking underground storage tank") Program which imposes liability only upon the owner or operator of an underground storage tank ("UST"), neither of which includes the Hopmayers.  Plaintiffs are attempting to do an "end around" the Illinois LUST program, the Hopmayers argue, by seeking to impose liability on parties not liable under the LUST program.  The Hopmayers argue:

> Were the plaintiffs allowed to maintain their [Section 107(a)] action, they would expand the universe of parties liable for leaking USTs in Illinois to encompass parties other than those that the State of Illinois has specifically determined should be liable as a matter of state environmental policy.  Such an action is in derogation of state law and clearly interferes with Illinois' ongoing efforts to establish a coherent, unified statewide policy governing liability of LUST sites.

Memorandum in Support of Motion to Dismiss at 11.

Further, the Hopmayers argue, *Burford* abstention is appropriate in this case because Illinois provides a forum for the litigation of LUST claims, and it is a forum which stands in an appropriate relationship of technical oversight or concentrated review as to such claims.  Plaintiffs, the Hopmayers assert, are proceeding with corrective action under the LUST program by submitting their site investigations and corrective actions plans to Illinois Environmental Protection Act ("IEPA"), with approval power in the IEPA and the right of appeal to "the Board," a body created as an independent board under the IEPA with five "technically qualified" members with authority to review determinations by the IEPA, and to conduct proceedings on complaints charging violations of the Act.  The Board has exclusive jurisdiction over private enforcement actions under the IEPA, including actions seeking cost recovery from responsible

parties under the Illinois LUST program.

The party requesting abstention bears the burden of demonstrating that abstention is warranted. *Morton College Bd. of Trustees v. Town of Cicero,* 18 F. Supp. 2d 921, 924 (N.D. Ill. 1998). Here, the Hopmayers appear to argue that abstention is appropriate because an exercise of federal jurisdiction would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *General Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 708 (7th Cir. 1991) (quoting *Colorado River Water Conservation Distr. v. United States,* 424 U.S. 800, 814 (1976)).

If there were any indication in Illinois law that Illinois' decision to impose liability only on owners or operators was intended to be *punitive,* the Hopmayers' argument that plaintiffs are attempting to disrupt the Illinois scheme might have some merit. Then it could be argued that using CERCLA to bring in additional responsible parties in some way undermines the state law scheme. But the Hopmayers have cited nothing to suggest, and the court finds it hard to believe, that Illinois has a public policy which requires punishing hapless owners like the plaintiffs who did nothing to create the hazardous condition of the property. Rather, in the absence of anything pointing to another conclusion, the court assumes that Illinois has chosen the owner as the responsible party in order to ensure that the party controlling the property fixes the problem. How Illinois' policy would in any way be undermined by a CERCLA ruling that the owner can seek financial assistance from other parties is hard for this court to imagine. Illinois law requires the owner to correct the problem. CERCLA appears to support that policy by giving the owner other pockets to provide financial assistance.

That the court does not understand how a CERCLA ruling could in any way interfere with any Illinois policy is enough to reject the Hopmayers' *Burford* abstention argument. But

the court notes in addition that the argument rests on a patent fallacy: that in the case of a conflict between an action to enforce a federal statute and a state regulatory scheme, abstention is appropriate. Where there is a conflict between the enforcement of plaintiffs' CERCLA rights and the Illinois regulatory scheme, the Supremacy Clause of the Constitution makes clear that the enforcement of the federal policy embodied in CERCLA takes precedence. *See* U.S. CONST. ART. VI, CL. 2. Since the court sees no conflict, but rather sees the Illinois enforcement scheme as being promoted by the policies of CERCLA, there is no need to reach this issue.

The Hopmayers' motion insofar as it asks this court to abstain under *Burford* is denied.[12]

### 2. *Illinois Environmental Protection Act (Count III)*

Count III asserts a cause of action for damages against the Hopmayers under sections 5/12(a) and (d) and 5/21(a) and (e) of the IEPA, which are various statutory prohibitions against pollution. 415 ILCS 5/12 (a), (d); 415 ILCS 5/21 (a), (e). The Hopmayers contend both that (1) the court lacks jurisdiction over this claim because exclusive jurisdiction over citizen enforcement actions lies in the Illinois Pollution Control Board, and (2) there is no private right of action under the Act.

As authority for the first proposition, the Hopmayers rely on §31(d) of the Illinois Environmental Protection Act, 415 ILCS 5/31(d), which describes the circumstances in which a person may file a complaint with the Board. The cited section says nothing about court actions, and says nothing about exclusive jurisdiction. The Hopmayers also cite one administrative

---

[12]In their Response to the Hopmayers' motion to dismiss, plaintiffs move to strike three exhibits attached to the Hopmayers' motion: (1) the affidavit of Gary S. Hopmayer; (2) a LUST incident report; and (3) a letter from the Illinois EPA to Ralph Neumann. Such exhibits are improper, plaintiffs argue, because a Rule 12(b)(6) motion is limited to the face of the complaint. Pls.' Response, at 4. The Hopmayers cite these exhibits as factual background and in support of their abstention argument. The court finds it unnecessary to consider these exhibits in deciding the motion to dismiss. Accordingly, plaintiffs' motion to strike is denied as moot.

decision, *People v. State Oil Co.,* PCB No. 97-103, 1999 Ill. Env. LEXIS 391 (August 19, 1999). In that case, the Board had to decide whether a cross-complaint filed before the Board was barred by *res judicata* because the claim asserted in the cross-complaint had been previously adjudicated by the Circuit Court of McHenry County. Deciding that jurisdiction over such claims was exclusive to the Illinois Pollution Control Board, and that the Circuit Court accordingly lacked jurisdiction to decide the claim, the Board concluded that the cross-complaint was not barred by *res judicata*.

Plaintiffs do not take issue with the statutory citation upon which the Hopmayers rely, 415 ILCS 5/31(d). Plaintiffs respond by arguing that the Pollution Control Board has "primary jurisdiction," and not exclusive jurisdiction over such claims, and, based on the authority of *People v. NL Industries,* 152 Ill.2d 82 (1991), there is concurrent jurisdiction, at least in instances where it would undermine judicial economy to require a plaintiff to split closely related claims between the Board and the courts. In *NL,* the Cook County State's Attorney, on behalf of the Illinois EPA, filed suit in the Circuit Court of Cook County against various parties who had at various times been owners of certain polluted land seeking to recover cleanup costs and to impose various fees and penalties. The Circuit Court dismissed the action, finding that the State had failed to exhaust its administrative remedies, depriving the Circuit Court of jurisdiction. The appellate court affirmed, but the Illinois Supreme Court reversed, holding that "circuit courts possess concurrent jurisdiction over cost-recovery actions . . . ." 152 Ill.2d at 99.

The parties' arguments about the proper court for such an action, however, overlooks a far larger problem: the question of whether there is a private right of action under the IEPA. Three recent cases in this court, reasoning from the principles for implying a private right of action set forth by the Illinois Supreme Court in *Fisher v. Lexington Health Care, Inc.,* 188 Ill.2d

455 (1999), have concluded that a private right of action cannot be implied. In *Fisher,* the court made clear that the implication of a private right of action is appropriate only if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to protect; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for statutory violations. *Id.* at 460.

Three judges of this court, reasoning from the principles articulated in *Fisher,* have ruled that there is no private right of action under the IEPA. In *Chrysler Realty Corp. v. Thomas Industries, Inc.,* 97 F. Supp. 2d 877, 881 (N.D. Ill. 2000), Judge Gettleman held that there is no private right of action under the IEPA because a private right of action is not necessary to provide an adequate remedy for violations of the act, given that the existing legislative scheme allowing for both judicial enforcement by the state, and citizens' suits before the Board adequately vindicates the statutory purposes. In *Norfolk Southern Ry. Co. v. Gee Co.,* No. 98 C 1619, 2001 WL 710116 at *16 (N.D. Ill. June 25, 2001), Judge Pallmeyer followed Judge Gettleman's conclusion. In *Great Oak, L.L.C. v. Begley Co.,* No. 02 C 6496, 2003 WL 880994 at *5 (N.D. Ill. March 5, 2003), Judge Guzman reached the same result. These cases acknowledge a line of precedent in this District stemming from *Krempel v. Martin Oil Marketing, Inc.,* No. 95 C 1348, 1995 WL 733439 (N.D.Ill. Dec. 8, 1995), in which Judge Grady of this court reached the contrary result. However, the cases refusing to imply a private right of action rely on the *Fisher* decision's clear articulation of a very high standard for implication of a private right of action, a decision announced four years after *Krempel.* This court agrees that the *Fisher* standard compels the conclusion that a private right of action in unnecessary to vindicate the purposes of the IEPA. Count III is dismissed.

### 3. *Illinois Joint Tortfeasors Contribution Act (Count II)*

Additionally, the Hopmayers seek the dismissal of plaintiffs' claim under the Illinois Joint Tortfeasors Contribution Act ("Contribution Act"), 740 ILCS 100/2. The Contribution Act provides a remedy when two or more persons are subject to liability in tort arising out of the same injury, and one tortfeasor has paid more than his *pro rata* share of that liability. 740 ILCS 100/1; *see also People v. Brockman*, 143 Ill.2d 351, 366 (1991). Relying on the proportionate liability scheme set out in the IEPA, the Hopmayers argue that they have no liability under that Act since they merely controlled the property during the time contamination occurred or continued, and mere ownership or control of the property does not give rise to liability for response costs under Illinois law.

The Amended Complaint adequately states a basis for a finding of liability against the Hopmayers. It alleges that, after the Hopmayers negotiated their purchase of the Property, they directed that the tanks be filled and abandoned in a manner which resulted in contamination of the Property, as well as the migration and exacerbation of the contamination, causing them to be liable for remediation of the contamination under the IEPA.

Alternatively, the Hopmayers argue that if the court dismisses plaintiffs' IEPA claim, it must also dismiss plaintiffs' Contribution Act claim. The Hopmayers argue that because their liability under the Contribution Act is wholly dependant on their liability under the IEPA, dismissal of plaintiffs' IEPA count requires dismissal of plaintiffs' Contribution Act claim. Although, as concluded above, plaintiffs cannot maintain their IEPA Count, plaintiffs may proceed independently on their Contribution Act claim.

In Illinois, "there need not be actual tort liability in order to state a cause of action for contribution." *Soo Line RailRoad Co. v. Tang Industries, Inc.*, 998 F. Supp. 889, 898 (N.D. Ill.

1998) (quoting *People v. Brockman*, 143 Ill.2d 351, 371 (1991)). Rather, in order to state a contribution claim, the plaintiff need show only that the "persons from whom contribution is sought are potentially capable of being held liable in a court of law or equity." *Brockman*, 143 Ill.2d at 371; *Doyle v. Rhodes*, 101 Ill.2d 1, 10 (1984) (holding that defendants with tort immunity are potentially liable in tort until their immunity is established). Thus, this court's conclusion that plaintiffs cannot maintain their IEPA action is not dispositive of their Illinois Contribution Act claim. *See Brockman*, 143 Ill.2d at 367 ("It is conceivable that a party could bring a third-party claim where no private cause of action would be permitted"); *see also NBD Bank v. Krueger Ringier*, 292 Ill. App. 3d 691, 697 (1st Dist. 1997).

Although plaintiffs cannot maintain an IEPA claim, plaintiffs (and the Hopmayers) may be prosecuted by the Illinois Attorney General or Illinois State's Attorney – the parties undisputedly responsible for the IEPA's enforcement. *See generally* 415 ILCS 5/31; *see also Great Oak*, 2003 WL 880994, at *5. The Hopmayers do not contest that plaintiffs' allegations constitute IEPA violations. Rather, the Hopmayers argue that this court lacks the jurisdiction to hear the merits of the plaintiffs' IEPA claim. Because plaintiffs have sufficiently pled that the Hopmayers violated the IEPA by their alleged sealing and abandonment of the subject USTs, and because such conduct potentially subjects them to tort liability in actions that may be brought by the Illinois Attorney General or State's Attorneys, the motion to dismiss Count II is denied.

### 4. Fraud (Count IV)

The Hopmayers also move to dismiss Count IV for fraud, arguing that the complaint fails to allege that at the time of the sale, the Hopmayers knew about the contamination of which plaintiffs complain and that the sales contract, which is attached to the complaint and therefore

can be considered in ruling on this motion, places no obligation on the Hopmayers to disclose known information about the environmental condition of the property.  Further, the Hopmayers argue, any reliance by the plaintiffs on any misrepresentations or omissions made by the Hopmayers was unreasonable, since plaintiffs had the ability to discover the truth for themselves.  The court finds that plaintiffs have adequately alleged a claim for fraud.

The court rejects the Hopmayers' argument that the complaint does not allege that the Hopmayers knew of the presence of environmental contamination on the Property at the time of the sale to NIM.  The Amended Complaint alleges: "The Hopmayers knowingly concealed the presence of USTs, hazardous substances and environmental contamination on the Property from Plaintiffs to influence Plaintiffs' purchase of the property . . . ."  Amend. Compl. ¶ 76.  Drawing all inferences in favor of plaintiffs, as the court must on a motion to dismiss, the court finds that plaintiffs have sufficiently alleged that the Hopmayers knew of the environmental contamination on the Property.

Next, the Hopmayers argue that the sales contract placed no obligation on them to disclose known information about the environmental condition of the property.  As part of their sales contract, the Hopmayers argue, the parties expressly agreed that the Illinois Responsible Property Transfer Act ("RPTA") did not apply to the transaction.  Regrettably, the Hopmayers have not seen fit to cite the portion of the sales contract on which they rely; the court has found references to the RPTA in the contract but the form in which the contract has been provided to the court renders these references totally ambiguous.  Moreover, even if the RPTA does not apply to this transaction, it is not at all clear that the Hopmayers are exempt from normal contractual obligations of good faith.  In any event, this issue has not been presented to the court in an adequate manner, either factually or legally, to permit a ruling at this time.

Finally, the court agrees with plaintiffs that the reasonableness of their reliance is not a matter susceptible to resolution on a motion to dismiss. The motion to dismiss Count IV is denied.

### 5. *Section 113(f) of CERCLA 113(f) (Count IX)*

In Count IX, plaintiffs seek contribution from the Hopmayers under §113(f) of CERCLA. After the briefing on the motion to dismiss was completed, the Supreme Court decided *Cooper Industries, Inc. v. Aviall Services, Inc.,* 543 U.S. 157 (2004). In *Cooper,* the Supreme Court held that contribution under §113(f) may be sought by a party only during or following a civil action brought against that party. Thus, the Hopmayers argue that parties like plaintiffs appear to be, whose liability does not depend on a civil action brought against them, have no remedy under §113(f). Plaintiffs have not responded to the Hopmayers' argument, set forth in their Motion for Leave to Cite Additional Authority, and the court concludes they have no dispute with the Hopmayers' argument based on *Cooper.* The motion to dismiss Count IX is granted.

### C. Hopmayers' Motion to Strike

The Hopmayers also move to strike plaintiffs' jury demand as to Counts I and IX, request for attorneys' fees in Counts I and IX, and request for compensatory damages in Count IX. Because Count IX has been dismissed, the court need resolve only whether plaintiffs are entitled to plead the jury demand and attorneys' fees requested in Count I of the Amended Complaint.

Under Rule 12(f) of the Federal Rules of Civil Procedure, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because normally, they serve only to cause delay. *Heller v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Nevertheless, where "motions to strike remove unnecessary clutter from

the case, they serve to expedite, not delay." *Id.*

###### 1. *Plaintiffs' Jury Demand*

"A party is entitled to a jury in a civil action where the Seventh Amendment or statute provides such a right." *U.S.A. v. Ekberg*, No. 01 C 50457, 2004 WL 793313, at *1 (N.D. Ill. April 12, 2004) (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)). CERCLA does not expressly provide a right for jury trial. *Id.* Further, the Seventh Amendment's jury trial guarantee generally does not extend to equitable claims. *Simler v. Conner*, 372 U.S. 221, 222 (1963).

With respect to Count I, which seeks cost recovery pursuant to 42 U.S.C. § 9607, such actions are not entitled to a jury trial because they are equitable in nature and seek "restitution or reimbursement of the costs [plaintiff] expended in order to respond to the health and environmental danger presented by hazardous substances." *Ekberg*, 2004 WL 793313, at *1 (quoting *United States v. Northeastern Pharmaceutical & Chemical Co. Inc.*, 810 F.2d 726, 749 (8th Cir. 1986)); *see also Hatco Corp. v. W.R. Grace & Co.-Conn.*, 59 F.3d 400, 412 (3d Cir. 1995); *State of New York v. Lashkins Arcade Co.*, 91 F.3d 353, 362 n.7 (2d Cir. 1996)); *Consolidated City of Indianapolis v. Union Carbide Corp.*, No. 02-CV-1340, 2003 WL 22327833, at *2 (S.D. Ind. 2003) ("Although the Seventh Circuit has not addressed the instant issue, both district courts within this circuit that have considered the issue concluded that plaintiffs asserting CERCLA recovery of response claims are not entitled to jury trials because their claims are equitable in nature.") (citing *Metal Processing Co., Inc. v. Amoco Oil Co.,* 173 F.R.D. 244, 247 (E.D. Wis. 1997); *GL Indus. of Mich., Inc. v. Forstmann Little & Co.,* 800 F. Supp. 695, 698-99 (S.D. Ind. 1991)).

Because plaintiffs' Count I is a cost-recovery action – both restitutionary and equitable in

nature – plaintiffs are not entitled to a jury trial on that Count, and the Hopmayers' motion to strike plaintiffs' jury demand as to Count I is granted.

2.      *Plaintiffs' Attorneys' Fees Request*

The Hopmayers also argue that plaintiffs' request for attorneys' fees as to Count I should be stricken.  Citing *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994), the Hopmayers argue that because plaintiffs' request for attorneys' fees is not sufficiently narrow so as to exclude counsel fees not "closely tied" to the cost of the cleaning up the water pollution at issue, plaintiffs' request should be stricken.

Under the long-standing "American rule," parties are not entitled to an award of attorneys' fees absent explicit statutory authorization.  *Alyeska Pipeline Serv. Corp. v. Wilderness Society*, 421 U.S. 240, 247 (1975).  Although CERCLA §107 does not expressly permit the award of attorneys' fees, the *Key Tronic* Court held that attorney work "that is closely tied to the actual cleanup" is a recoverable expense under CERCLA §107(a)(4)(B).  511 U.S. at 820.  The *Key Tronic* Court held that attorney work that assisted in identifying potentially responsible parties was recoverable as "a necessary cost of response" under CERCLA because such activity "increases the probability that a cleanup will be effective and get paid for."  *Id.*[13]

It is unclear at this time how much, if any, of the plaintiffs' attorney's fees will be recoverable under the foregoing standard.  Nevertheless, because plaintiffs may be able to show

_____

[13]Following the *Key Tronic* decision, lower courts have held the following types of counsel fees to be recoverable in CERCLA actions: (1) those incurred in connection with the search for potentially responsible parties ("PRPs"); "(2) fees related to client conferences regarding site work and cleanup matters, site visits to review cleanup and conferences with technical staff; (3) fees associated with investigatory efforts to identify contaminants on the property; (4) fees related to costs of EPA monitoring or oversight of remedial action."  *Sealy Connecticut, Inc. v. Litton Industries, Inc.*, 93 F. Supp. 2d 177, 190-91 (D. Conn. 2000) (internal citations omitted).  "In contrast, the following types of costs have been found not recoverable under CERCLA: (1) costs incurred in negotiating a consent decree with the EPA; and (2) costs of audits conducted by plaintiff committee of PRPs to review expenses charged by EPA to committee with regard to the cleanup."  *Id.*  Plaintiffs should keep factually detailed records to support any claim for attorney's fees.

that some of their attorney costs are "closely tied" to the actual cleanup of the water pollution at issue, the Hopmayers' motion to strike plaintiffs' request for attorney's fees is denied.

**III.     Conclusion**

For the foregoing reasons, Carlson's motion to dismiss Counts V and VII is denied; the Hopmayers' motion to dismiss is granted in part and denied in part; the Hopmayers' motion to strike is granted in part and denied in part; and plaintiffs' motion to strike is denied as moot.


ENTER:


___/s/_____
Joan B. Gottschall
United States District Judge

Dated: April 20, 2006